IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terrence Dimingo Terry, #307935, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>Mr. Leroy Cartledge, Warden of )<br>McCormick Correctional Institution, )<br>)<br>Respondent. )<br>) | Civil Action No. 6:10-2006-JFA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The petitioner is currently confined at the McCormick Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Greenville County. The petitioner was indicted by the Greenville County Grand Jury during the February 2005 Term of the Court of General Sessions for two counts of Lewd Act Upon a Child (2005-GS-23-1157, 2005-GS-23-1158) and one count of Criminal Sexual Conduct with a Minor, First Degree (2005-GS-23-1274) (App. 127-28, 130-31, 133-34). The petitioner was represented by Ernest Hamilton (App. 1-16). The State was represented by Assistant Solicitor John Newkirk. On March 8, 2005, the petitioner waived his right to a trial by a jury and pled guilty to all of the charges. The Honorable Edward W. Miller, Circuit Court Judge, sentenced the petitioner to 20 years confinement on the Criminal

Sexual Conduct with a Minor conviction, and 15 years confinement for each of the Lewd Act with a Minor convictions, all to be served concurrently (App. 13). There was no direct appeal.

### *PCR Action*

The petitioner filed an Application for Post-Conviction Relief on November 11, 2005 (2005-CP-23-7327), alleging prosecutorial misconduct, ineffective assistance of counsel, and lack of subject matter jurisdiction (App. 17-24). Specifically, the petitioner asserted that the prosecutor failed to "disclose a valid DNA analysis report or certified chain of custody"; defense counsel was ineffective because he failed to advise him of right to a direct appeal and failed to investigate into the petitioner's case; and the court lacked subject matter jurisdiction "because of the evidence presented to the grand jury", and the failure to provide petitioner with a "preliminary hearing, violating state and federal constitutional rights, due process, and equal protection under the law" (App. 19). The State filed its Return on June 6, 2006 (App. 25-28). Through PCR counsel Susannah C. Ross, the petitioner subsequently filed an Amended Application on February 5, 2007 (App. 29-30). In the Amended Application, the petitioner asserted there was a violation of due process guarantees of the State and U.S. Constitutions in that the petitioner's plea was not knowingly, voluntarily, and intelligently made (App. 29). Specifically, he argued that the record of his guilty plea showed that he was not made aware of the nature and crucial elements of the charge against him. He alleged this was especially problematic because he was under the influence of prescribed mental health medications that affected his ability to comprehend what he was doing (App. 29-30). He further alleged that the judge failed to inform him of his right to appeal (App. 30).

A hearing was held on March 1, 2007 before the Honorable Michael G. Nettles, Circuit Court Judge (App. 31-108). The petitioner was present, and he was

represented by Ms. Ross. Assistant Attorney General Karen C. Ratigan represented the State. The PCR court filed its Order on April 11, 2007 (App. 109-16).

In its Order, the PCR court noted the petitioner alleged that the solicitor engaged in prosecutorial misconduct by not providing the SLED lab report for the rape kit analysis pursuant to *Brady* and Rule 5 of the South Carolina Rules of Criminal Procedure, by failing to submit a pair of underpants and shorts in evidence for forensic testing, and by stating during the guilty plea that the petitioner admitted guilt in family court when the alleged admission was only as to the finding of sexual abuse, not sexual battery, and that the admission had not been provided in discovery (App. 110-11).

The PCR court found that the allegations of prosecutorial misconduct were without merit. The petitioner submitted as an exhibit the SLED lab report for the rape kit analysis that was dated March 2, 2005 (App. 111). It showed no sperm or semen was found and was neither exculpatory nor incriminating. No evidence was presented as to whether the solicitor had received the report prior to the guilty plea, which took place on March 8, 2005. However, the report was present in the solicitor's file over one year later when the file was subpoenaed by the petitioner. The petitioner and Mr. Hamilton testified that they did not know of the report at the time of the guilty plea. The court found that while a *Brady* violation is one type of prosecutorial misconduct that does not require a showing of bad faith, the evidence presented by the petitioner failed to adequately support a *Brady* claim because he failed to demonstrate (1) the evidence was favorable to the accused, (2) it was in the possession of or known to the prosecution, (3) it was suppressed by the prosecution, and (4) it was material to guilt or punishment. *Gibson v. State*, 514 S.E.2d 320 (S.C. 1999) (App. 111).

The petitioner alleged that the solicitor failed to submit a pair of underpants and shorts collected as evidence to SLED for forensic testing, and presented a property and evidence report showing that the potentially exculpatory evidence was destroyed in 2005.

3

The PCR court found that because the petitioner failed to prove the evidence was exculpatory or that the solicitor acted in bad faith, the solicitor's actions did not amount to prosecutorial misconduct (App. 111). The court further noted that the State does not have an absolute duty to preserve potentially useful evidence that might exonerate a defendant. *Arizona v. Youngblood,* 488 U.S. 51 (1988); *State v. Mabe*, 412 S.E.2d 386 (S.C. 1991); *State v. Jackson*, 396 S.E.2d 101 (S.C. 1990) (App. 111-12).

The transcript of the petitioner's guilty plea stated in the recitation of facts, "The defendant admitted guilt in the DSS family court proceedings." (R. p. 12, l. 17) (App. 112). According to the petitioner's testimony, he was not represented by counsel at the DSS proceedings and any admission was only the general admission of an agreement with the family court's finding of sexual abuse, not an admission of guilt of sexual battery, which the petitioner expressly denied. The petitioner submitted a family court order contained in the file subpoenaed from the solicitor that said that the petitioner was in agreement with the finding of sexual abuse of his three step-daughters to support the assertion that the solicitor was aware that any admission was of sexual abuse only. The PCR court found that this did not entail prosecutorial misconduct.

The petitioner alleged counsel's performance was deficient because of the following: (1) failure to request an evaluation or discover mental health issues apparent due to the applicant's housing in the mental health sector of the law enforcement center and the fact the petitioner was on prescription mental health medications for the nine months he was incarcerated prior to his guilty plea and at the time of his plea; (2) failure to investigate by meeting with the petitioner to discuss the case only once, the day of the guilty plea, not filing discovery, failing to review the evidence in property and evidence or request independent testing of that evidence, and failing to attend the family court hearing on the matter of alleged sexual abuse when the petitioner appeared without counsel; (3) failure to present mitigating evidence at the petitioner's guilty plea by not mentioning the petitioner's 12-year

4

military background, depression, and mental health background, or the failure of the victims to attend the plea or recommend incarceration; (4) failing to effectively negotiate with the solicitor pleading "straight up" despite lack of any physical or forensic evidence of sexual battery and the victim's statement that the sexual battery happened with her clothes on; and, (5) failing to adequately advise the petitioner providing only a cursory overview of the charges without reviewing collateral consequences, his right to appeal, or explaining the meaning of sexual battery (App. 112-13).

The PCR court found that these allegations were without merit with the exception of the allegation that defendant was not advised as to the meaning of sexual battery (App. 113). The petitioner stated that at the time of his guilty plea he had not been advised that sexual battery does not mean any battery of a sexual nature, but, rather, is statutorily defined to include only certain specific acts, which can be loosely described as involving penetration of some sort. *State v. Elliott*, 552 S.E.2d 727 (S.C. 2001) *rev'd on other grounds* (App. 113-14). The petitioner stated that he did not commit a sexual battery on his step-daughter and would not have pled guilty to criminal sexual conduct with a minor if he had known that it involved sexual penetration (App. 114). Plea counsel testified that he met with the petitioner one time, the day of his guilty plea, during the nine months he represented him. Counsel admitted that he did not review the meaning of sexual battery with the petitioner, saying that lewd act and criminal sexual conduct with a minor are basically the same thing, messing with children. The PCR court found that the plea counsel's testimony demonstrated a lack of knowledge of the nature of the crimes for which he represented the petitioner (App. 114). Based upon the testimony of trial counsel and the petitioner, the PCR court found that the plea attorney did not advise petitioner of the meaning of sexual battery and the significance of penetration as it relates to criminal sexual conduct with a minor in the first degree. Considering the entire record including the guilty

plea transcript, the PCR court found that the error was not cured by the colloquy during the guilty plea.

The PCR court further found that reasonable and prevailing professional norms would require that a lawyer advise a criminal defendant of the elements of the crime and that he ensure that the defendant understands the nature of the offense to which he is charged (App. 114). The petitioner's plea counsel did not do this. Upon hearing the testimony and reviewing the transcript of the plea, the PCR court found that the petitioner had shown prejudice, as had he known the definition of sexual battery, he would not have pled guilty and would have insisted on going to trial (App. 115).

The petitioner further argued that the State lacked subject matter jurisdiction because of invalid arrest warrants and indictments as well as the fact that his case did not receive a preliminary hearing. The PCR court disagreed and found that the indictments contained the necessary elements of the intended charge to confer subject matter jurisdiction regardless of any alleged errors in the warrants and the failure to have a preliminary hearing. *State v. Gentry*, S.E.2d 494 (2005). Further, the PCR court found the petitioner presented no evidence that a preliminary hearing was properly requested pursuant to Rule 2(b) SCrimP and even if it was properly requested, subject matter jurisdiction exists upon the proper indictment of the case even if a preliminary hearing is not held. *State v. Ballington*, 551 S.E.2d 280 (2001) (App. 115).

The PCR court granted the petitioner's motion for post-conviction relief based on ineffective assistance of counsel (App. 116). The convictions were reversed and remanded for a new trial, and the petitioner was to be released to the custody of the Greenville County Detention Center where his original bond would be reinstated.

On April 24, 2007, the State filed its Motion to Alter or Amend the Final Order (App. 117-9). The petitioner also filed a *pro se* Motion for Reconsideration. The PCR court filed its Order Denying Rule 59(e) Motion to Alter or Amend the Final Order on July 6, 2007

(App. 120-21). The PCR court was not persuaded to alter or amend the judgment (App. 120). The PCR court further found that oral argument would not aid in the reconsideration of the original judgment and that the previous order fully comported with the requirements of Rule 52(a) SCRCP.

### *PCR Appeal*

The State timely filed a Notice of Appeal on July 12, 2007. On appeal, the petitioner was represented by Robert M. Pachak, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The State perfected its appeal with the filing of a Petition for Writ of Certiorari. In the Petition, the State raised two arguments. First, the State argued the PCR judge erred in finding the petitioner met his burden of proving ineffective assistance of counsel. Second, the PCR judge erred in finding any ineffective assistance of counsel was not cured by the plea colloquy. The petitioner filed a Return to the Petition for Writ of Certiorari, asserting there was evidence to support the PCR judge's findings that plea counsel was ineffective in failing to explain the meaning of sexual battery prior to his guilty plea. The petitioner did not file a Notice of Appeal or raise any separate issues in the PCR Appeal.

In an Order filed November 6, 2008, the South Carolina Supreme Court granted the Petition for Writ of Certiorari. The court also ordered the parties to proceed to serve and file the appendix and briefs as provided by Rule 227(j), SCACR. On November 19, 2008, the State filed its Final Brief of Petitioner, raising the same issues raised in the Petition for Writ of Certiorari. The petitioner filed a Final Brief of Respondent, asserting the same argument as in the Return to the Petition for Writ of Certiorari.

In a published Opinion filed July 13, 2009, the South Carolina Supreme Court reversed the PCR court's Order. *Terry v. State*, 680 S.E.2d 277 (S.C. 2009). In the opinion, the South Carolina Supreme Court distinguished the definitions for "sexual battery" and "sexual abuse." *Id.* at 283. In the instant case, plea counsel testified at the PCR hearing

that he believed the terms "sexual battery" and "sexual abuse" were the same. *Id.* Because plea counsel did not differentiate between the two terms or correctly explain them to the petitioner, there was evidence to support the PCR judge's decision that plea counsel's performance was deficient. *Id.* Given plea counsel did not comprehend this distinction and did not inform petitioner of a crucial element of the offense of CSC with a minor, first degree, the Supreme Court agreed with the PCR judge that counsel's representation fell below an objective standard of reasonableness. *Id.*

The Supreme Court found, however, that plea counsel's deficient performance was cured by the plea colloquy even though there was no specific discussion of the term "sexual battery." *Terry*, 680 S.E.2d at 283. The PCR judge found that any allegations regarding the petitioner's competency were not meritorious. *Id.* In light of this decision, the PCR judge implicitly found that the petitioner had the requisite mental capacity to comprehend the plea proceeding. *Id.* At the plea proceeding, the judge read the indictments, and the petitioner acknowledged that he understood these charges. The indictment for CSC with a minor, first degree identified the elements of the offense, which included a reference to a "sexual battery." *Id.* After the petitioner affirmatively stated that he understood the charges and admitted his guilt, the solicitor gave a detailed factual basis for the charges. *Id.* In the factual recitation, the solicitor identified conduct that constituted the elements of first-degree CSC with a minor. *Id.* Specifically, the solicitor conveyed that the petitioner had penetrated the nine-year-old victim's vagina with his finger and her anus with his penis. *Id.* Both of these acts clearly meet the definition of a "sexual battery." *Id.* The petitioner admitted that the solicitor's statement of facts was true. *Id.* Therefore, the Supreme Court found that the petitioner knowingly and voluntarily entered a plea as to the charge of CSC with a minor, first degree. *Id.* 283-84 (citing *Roddy v. State*, 528 S.E.2d 418, 421 (2000)(recognizing that for a guilty plea to be voluntarily and knowingly entered into, the

record must establish the defendant had a full understanding of the consequences of his plea and the charges against him)).

In view of the Supreme Court's decision, it further concluded the PCR judge erred in granting the petitioner a new trial for the two counts of lewd act upon a child. *Terry*, 680 S.E.2d at 284. Given a "sexual battery" is not an element of lewd act upon a child and that the petitioner admitted to inappropriately touching his stepdaughters, the two charges for lewd act upon a child should not have been affected by plea counsel's deficient performance with regard to the definition of a "sexual battery." *Id.* Accordingly, the Supreme Court found there was no evidence to support the PCR judge's decision to grant the petitioner relief on those two convictions. *Id.* Accordingly, the decision of the PCR judge was reversed. *Id.* The Remittitur was issued on July 29, 2009.

## FEDERAL HABEAS PETITION[1]

### *First Petition*

Ground One: Prosecutorial Misconduct - Violation of Rule 5-Brady/Rules 5 and 6 - SCRCrimP. Withholding of SLED results. (See Memorandum)

Supporting Facts:
1.  County Sheriffs Dept. retrieved from hospital "1 rape kit," (See exhibit 3).

2.  Investigator prepared "property control" and "chain of custody" reports for transference of kit to SLED for DNA testing, for General Sessions Court (marked "ORIGINAL" copy). Reports prepared for clothing as well.

3.  DNA results completed and returned to sheriff/solicitors' office - via cc: (6) six days prior to G.S. appearance of March 8, 2005. (See exhibit P-2)

4. 1-18-05/discovery "itemized cover sheet" shows no SLED results (exhibit P-6)

---

[1]The petitioner filed three separate petitions. By order dated September 20, 2010, all three petitions were combined as one. These are the grounds raised in each petition.

Ground Two: Prosecutorial Misconduct - Use of alleged admission by Applicant from Family Court; (See Memorandum); without appointed counsel

Supporting Facts:
1. Applicant attended a Family Court hearing on October 12, 2004 without appointed counsel. (See Transcript -(PCR) p. 87, l. 12-25; p. 88, l. 1-3).

2. A court order was issued on August 26, 2004 and October 12, 2004 (Trans.- (PCR)- p. 85, l. 1-9). The "orders" were "Treatment Plans." (See exhibits 9 (a & b)

3. There was "no transcript" in discovery or forwarded to G.S. Court.

4. The "solicitor," stated in the guilty plea transcript (in the recitation of facts)-that "the defendant admitted guilt in Family Court." (R p. 12, l 17).

Ground Three: Ineffective Assistance of Counsel - Issues 2., 1., and 4. - (Please see PCR Order)(See also Memorandum Argument III)

Supporting Facts:
1. Failure to investigate - met with Applicant once (the day of the plea - 10 minutes) (Plea Transcript - p. 84, l. 9-11; p. 50, l. 25; p. 51, l. 1-9) - No Brady request.

2. Failure to address the Fact of my two court appearances under psychotropic medications (Family and G.S.). (Plea Trans. -p. 54, l. 17-24; p. 56, l. 15-20; p. 59, l. 8-12; p. 59, l. 21-25; pgs. 60-62, l. 1-25). (See exhibits )(See exhibits )

3. Failure to negotiate plea offer(s), esp. 1-18-05! (Trans.-p. 97, l. 15-25; p. 98, l. 1-19)

Ground Four: Ineffective Assistance of Counsel - Issues 3. and 5. (Please see PCR Order)(See also Memorandum Argument III)

Supporting facts:
1. Failure to present mitigating evidence, ie - there was "never" a psychological exam performed in this case, despite "mandatory requirement and "two court order mandates." (Plea Trans.-p. 85, l. 23-25; p. 86, l. 1-25; p. 87, l. 1-8). (See exhibit(s)).

2. Failure to adequately advise the Applicant, ie - counsel advised guilty plea despite lack of evidence. (Trans.-p. 38, l. 3-15).

10

### *Second Petition*

Ground One: Prosecutorial Misconduct at the Certiorari Level - deliberate obstruction in the true preparation of the Record on Appeal (Appendix)

Supporting Facts:
    1.    During the course of the PCR hearing I entered (9) nine exhibits into the Court records. The PCR judge - in turn - entered "two document," (the plea offers), as well. (See exhibit); (See also, PCR Transcript - pgs. 97-98, l. 15-19).

    2.    I received PCR relief, (Reverse and Remand), and as a result, the state became the "Petitioner" for certiorari with the responsibility of preparing an Appendix. (See exhibit ). (See Memorandum In Support)

    3.    The Attorney General "retained All exhibits" with the G.S. Clerk. (See exhibit).

Ground Two: Ineffective Appellate Counsel - (See Memorandum) - Failure to provide no more than a "less than perfunctory" representation/investigation.

Supporting Facts:
    From our very first communique it was established that we had "opposing views" concerning presenting the misconduct (PCR) issue as "highly meritorious" in certiorari. Me -for, him -against. This view was escalated further, counsel refused to pursue stipulation - 3. In the PCR Final Order; p. 8, (enclosed). Counsel then refused to challenge the absence of all the exhibits from the Appendix. In both the Respondents' "return for Writ" and "Brief for Certiorari" my counsel "adopted" the States' inaccurate "case statement.

Ground Three: Misinterpretation of the Record on Appeal (Appendix) resulting in "reversal" of the PCR Order granting relief. (See Memorandum)

Supporting Facts: Discrepancies are per page No. 5 of the Opinion. (See also; Memorandum)

    1.    The Petitioner responded "yes" to taking medication within 24 hours and did elaborate on his treatment.

    3.    There was an additional "Amended Application" from the Petitioner, filed but deliberately witheld[sic] from the "record on appeal."
* This would be (PCR exhibit P-8)!

Ground Four:  Due Process violation - Denial of right to present case under "pro se" status by the Chief Justice of the S.C. Supreme Court.

 1. Contacted Appellate counsel - immediately after appointment - to discuss pursuance of Grounds One thru Three, in this application

 2. Counsel ignored my concerns, and as a result, "unceremoniously" told me that "if I were not satisfied with his appointment, I know what I could do."

 3. Petitioned the Court for "pro se" status by serving all concerned parties. (See exhibit ) (See also Memorandum)

 4. Pro se representation denied by Chief Justice (See exhibit )

### *Third Petition*

Ground One:  14th Amendment due process violation of Brady. "No Relief" at PCR failure to disclose DNA (Sled results) or toxicology report.

Supporting facts:
 1. Greenville Co. Sheriff's Investigator prepared 2 "Property Control and Custody Reports" for the Rape Kit Forwarded and returned from SLED.

 2. Copy of "results" also forwarded (cc:) - to Solicitor (dated March 2, 2005).

 3. "Itemized" discovery list dated 1-18-05-shows P, and, E Reports sent to defense counsel, but NO RESULTS.

 4. Plea hearing was March 8, 2005. Results still withheld No disclosure of "Toxicology" evidence, whatsoever. All "potential" evidence destroyed 3 months after plea. (except toxicology results). Facts 1-3 argued at PCR. Judge ruled issue of DNA results "unmeritorious" for relief.

Ground Two: Misconduct/abuse of discretion/use of "alleged admission" from Family Court by the Applicant without counsel-, (See Memorandum); not in discovery.

Supporting facts:
 1. Applicant attended a Family Court hearing on October 12, 2004, without appointed counsel. (See, PCR Transcript - p.87, lines 12-25; p. 88, lines 1-3).

12

> 2. A court order was issued on both August 26, and October 12, 2004. (PCR Trans.. P. 85, lines 1-9). The Orders, though argued as exhibits, never became a part of the records.
>
> 3. There was "No statement of Admission" provided for G.S. Court.
>
> 4. Yet, the solicitor stated at the plea hearing that "The defendant" admitted guilt in Family Court."
>
> 5. PCR Judge ruled issue "unmeritorious"
>
> Ground Three: The PCR Judge erred in granting relief based upon "one issue" of I.A.C., (See Memorandum), Abuse of descretion.
>
> Supporting facts: At the PCR hearing the Petitioner submitted that his counsel failed to investigate and as a result: A.) Defendant pled under the influence of "psychotropic drugs" B.) Failed to request "manditory[sic] psychological evaluation. (Court ordered!) C.) Failed to present SLED results to the Petitioner before advising a guilty plea. D.) Failed to negotiate the State's "plea offer" for "a cap" on active time. * The PCR Judge found "no ineffective counsel" or Prosecutorial Misconduct

On December 10, 2010, the respondent filed a return and motion for summary judgment. By order filed December 10, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 28, 2011, the respondent filed an amended return and memorandum of law in support of summary judgment. Another *Roseboro* order was issued on January 28, 2011. The petitioner filed his opposition to the motion for summary judgment on March 10, 2011, and the respondent filed a reply on March 31, 2011.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

13

adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, United States Code, Section 2244(d), provides:

(1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to

> the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## **ANALYSIS**

The respondent first argues[2] that the petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This court agrees. The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2). State collateral review tolls the one-year statute of limitations under § 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), but it does not establish a right to file within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). Further, the tolling period for state collateral review does not include the time for filing a petition for certiorari in the United States Supreme Court. 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007) ("Read naturally, the text of the statute must mean that the statute of limitations is tolled only while state courts review the application. ... [A]llowing the statute of limitations to be tolled by certiorari petitions would provide incentives for state prisoners to file certiorari petitions as a delay tactic. By filing a petition for certiorari, the prisoner would push back § 2254's deadline while we resolved the petition for certiorari. This tolling rule would provide an incentive for prisoners to file certiorari petitions – regardless of the merit of the claims asserted – so that they receive additional time to file their habeas applications").

---

[2] As this court recommends that the petition be dismissed as untimely, the respondent's remaining arguments will not be addressed.

Here, the petitioner's state court convictions became final on March 18, 2005, which was ten days following his guilty plea on March 8, 2005. *See* Rule 203(b)(2), SCACR (must file notice of appeal within ten days of conviction). The petitioner then filed his state PCR action (2005-CP-23-7327) on November 11, 2005, at which time 237 days of untolled time had elapsed. The statute of limitations was tolled pursuant to 28 U.S.C. § 2244(d)(2) until July 29, 2009, when the South Carolina Supreme Court issued the remittitur after reversing the decision of the PCR judge. Accordingly, the statute of limitations expired 128 days later, on December 4, 2009.

As the petitioner is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court. The petitioner delivered his § 2254 petition to prison authorities for mailing to the court on July 28, 2010, the date stamped on the back of the envelope containing his petition (doc. 1-3). Thus, the petitioner exceeded the statute of limitations by 236 days.

The Fourth Circuit Court of Appeals has held that the AEDPA statute of limitations is subject to equitable tolling. *See Harris*, 209 F.3d 325. "To be entitled to equitable tolling, [the petitioner] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Lawrence*, 549 U.S. at 336. In *Harris*, the Fourth Circuit Court of Appeals described the analysis of a claim of equitable tolling as follows:

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999). The doctrine has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir.1996) (citation omitted). But any invocation of equity to relieve the strict application of a

16

> statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

209 F.3d at 330. The court went on to find:

> Harris argues that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel. While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that "extraordinary circumstance" external to Harris that would justify equitable tolling. *See Taliani*, 189 F.3d at 598 (holding that a lawyer's miscalculation of a limitations period is not a valid basis for equitable tolling); *see also Sandvik*, 177 F.3d at 1272 (refusing to toll the limitations period where the prisoner's delay was assertedly the result of a lawyer's decision to mail the petition by ordinary mail rather than to use some form of expedited delivery); *Fisher*, 174 F.3d at 714-15 (refusing to toll limitation where access to legal materials that would have given notice of the limitations period was delayed); *Miller v. Marr*, 141 F.3d at 978 (same); *Gilbert v. Secretary of Health and Human Services*, 51 F.3d 254, 257 (Fed. Cir.1995) (holding that a lawyer's mistake is not a valid basis for equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (refusing to apply equitable tolling where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation).

*Id.* at 330-31.

Here, the petitioner has failed to show that he was prevented from timely filing by some kind of wrongful conduct on the part of the State of South Carolina or by extraordinary circumstances that were beyond his control. In the response in opposition to the motion for summary judgment, the petitioner appears to assert he is entitled to equitable tolling because he was denied "his right to a *pro se* petition for rehearing in certiorari" (pet.

17

resp. m.s.j. at 20). However, as argued by the respondent, this claim is without merit. The petitioner was not entitled to file a *pro se* petition for rehearing in his PCR appeal. He was represented by counsel in the PCR appeal, and South Carolina courts do not allow hybrid representation. *See Foster v. State*, 379 S.E.2d 907 (S.C. 1989); *Jones v. State*, 558 S.E.2d 517 (S.C. 2002). The petitioner has failed to show any reason for his delay in filing the instant federal petition, much less one justifying equitable tolling of the limitations period. Based upon the foregoing, the petition was not timely filed, and it is barred by Section 2244(d)(1).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 41) be granted. *See Rouse v. Lee*, 339 F.3d 238, 257 (4th Cir. 2003) (affirming dismissal of petition filed one day late), *cert. denied*, 541 U.S. 905 (2004).

June 16, 2011                                              s/ Kevin F. McDonald
Greenville, South Carolina                         United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).