IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Terrence Dimingo Terry, #307935, | ) | Civil Action No. 6:10-2006-BHH-KFM |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Mr. Leroy Cartledge, Warden of McCormick Correctional Institution, | ) | |
| Respondent. | ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The petitioner is currently confined at the Tyger River Correction Institution in the South Carolina Department of Corrections ("SCDC") pursuant to orders of commitment from the Clerk of Greenville County. The petitioner was indicted by the Greenville County Grand Jury during the February 2005 Term of the Court of General Sessions for two counts of Lewd Act Upon a Child (2005-GS-23-1157, 2005-GS-23-1158) and one count of Criminal Sexual Conduct with a Minor, First Degree (2005-GS-23-1274) (app. 874-79).[1] The petitioner was represented by Ernest Hamilton (app. 1-16). The State

---

[1]The respondent cites the appendix filed with the September 28, 2015, motion for summary judgment as "2nd App." The court will cite this appendix, which is located at ECF document numbers 148-1 through 148-5, as "app."

was represented by Assistant Solicitor John Newkirk.  On March 8, 2005, the petitioner waived his right to a trial by a jury and pled guilty to all of the charges. The Honorable Edward W. Miller, Circuit Court Judge, sentenced the petitioner to 20 years confinement on the Criminal Sexual Conduct with a Minor conviction and 15 years confinement for each of the Lewd Act with a Minor convictions, all to be served concurrently (app. 13).  There was no direct appeal.

### First PCR Action

The petitioner filed an application for post-conviction relief ("PCR") on November 11, 2005 (2005-CP-23-7327), alleging prosecutorial misconduct, ineffective assistance of counsel, and lack of subject matter jurisdiction (app. 17-24).  Specifically, the petitioner asserted that the prosecutor failed to "disclose a valid DNA analysis report or certified chain of custody"; defense counsel was ineffective because he failed to advise him of right to a direct appeal and failed to investigate into the petitioner's case; and the court lacked subject matter jurisdiction "because of the evidence presented to the grand jury", and the failure to provide petitioner with a "preliminary hearing, violating state and federal constitutional rights, due process, and equal protection under the law" (app. 19).  The State filed its return on June 6, 2006 (app. 25-28).  Through PCR counsel Susannah C. Ross, the petitioner subsequently filed an amended application on February 5, 2007 (app. 29-30). In the amended application, the petitioner asserted there was a violation of due process guarantees of the State and U.S. Constitutions in that the petitioner's plea was not knowingly, voluntarily, and intelligently made (app. 29).  Specifically, he argued that the record of his guilty plea showed that he was not made aware of the nature and crucial elements of the charge against him.  He alleged this was especially problematic because he was under the influence of prescribed mental health medications that affected his ability to comprehend what he was doing (app. 29-30).  He further alleged that the judge failed to inform him of his right to appeal (app. 30).

A hearing was held on March 1, 2007, before the Honorable Michael G. Nettles, Circuit Court Judge (app. 31-108). The petitioner was present, and he was represented by Ms. Ross. Assistant Attorney General Karen C. Ratigan represented the State. The PCR court filed its order on April 11, 2007 (app. 139-46).

In its order, the PCR court noted the petitioner alleged that the solicitor engaged in prosecutorial misconduct by not providing the SLED lab report for the rape kit analysis pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Rule 5 of the South Carolina Rules of Criminal Procedure, by failing to submit a pair of underpants and shorts in evidence for forensic testing, and by stating during the guilty plea that the petitioner admitted guilt in family court when the alleged admission was only as to the finding of sexual abuse, not sexual battery, and that the admission had not been provided in discovery (app. 140-41).

The PCR court found that the allegations of prosecutorial misconduct were without merit (app. 140-42). The petitioner submitted as an exhibit the SLED lab report for the rape kit analysis that was dated March 2, 2005 (App. 111). It showed no sperm or semen was found and was neither exculpatory nor incriminating. No evidence was presented as to whether the solicitor had received the report prior to the guilty plea, which took place on March 8, 2005. However, the report was present in the solicitor's file over one year later when the file was subpoenaed by the petitioner. The petitioner and Mr. Hamilton testified that they did not know of the report at the time of the guilty plea. The court found that while a *Brady* violation is one type of prosecutorial misconduct that does not require a showing of bad faith, the evidence presented by the petitioner failed to adequately support a *Brady* claim because he failed to demonstrate (1) the evidence was favorable to the accused, (2) it was in the possession of or known to the prosecution, (3) it was suppressed by the prosecution, and (4) it was material to guilt or punishment. *Gibson v. State*, 514 S.E.2d 320 (S.C. 1999) (app. 141).

3

The petitioner alleged that the solicitor failed to submit a pair of underpants and shorts collected as evidence to SLED for forensic testing and presented a property and evidence report showing that the potentially exculpatory evidence was destroyed in 2005. The PCR court found that because the petitioner failed to prove the evidence was exculpatory or that the solicitor acted in bad faith, the solicitor's actions did not amount to prosecutorial misconduct (app. 141-42). The court further noted that the State does not have an absolute duty to preserve potentially useful evidence that might exonerate a defendant. *Arizona v. Youngblood,* 488 U.S. 51 (1988); *State v. Mabe*, 412 S.E.2d 386 (S.C. 1991); *State v. Jackson*, 396 S.E.2d 101 (S.C. 1990) (app. 141-42).

The transcript of the petitioner's guilty plea stated in the recitation of facts, "The defendant admitted guilt in the DSS family court proceedings" (app. 12, 142). According to the petitioner's testimony, he was not represented by counsel at the DSS proceedings and any admission was only the general admission of an agreement with the family court's finding of sexual abuse, not an admission of guilt of sexual battery, which the petitioner expressly denied. The petitioner submitted a family court order contained in the file subpoenaed from the solicitor that said that the petitioner was in agreement with the finding of sexual abuse of his three step-daughters to support the assertion that the solicitor was aware that any admission was of sexual abuse only. The PCR court found that this did not entail prosecutorial misconduct (app. 142).

The petitioner alleged his guilty plea counsel's performance was deficient because of the following: (1) failure to request an evaluation or discover mental health issues apparent due to the applicant's housing in the mental health sector of the law enforcement center and the fact the petitioner was on prescription mental health medications for the nine months he was incarcerated prior to his guilty plea and at the time of his plea; (2) failure to investigate by meeting with the petitioner to discuss the case only once, the day of the guilty plea; not filing discovery; failing to review the evidence in

4

property and evidence or request independent testing of that evidence; and failing to attend the family court hearing on the matter of alleged sexual abuse when the petitioner appeared without counsel; (3) failure to present mitigating evidence at the petitioner's guilty plea by not mentioning the petitioner's 12-year military background, depression, and mental health background, or the failure of the victims to attend the plea or recommend incarceration; (4) failing to effectively negotiate with the solicitor pleading "straight up" despite lack of any physical or forensic evidence of sexual battery and the victim's statement that the sexual battery happened with her clothes on; and, (5) failing to adequately advise the petitioner providing only a cursory overview of the charges without reviewing collateral consequences, his right to appeal, or explaining the meaning of sexual battery (app. 142-43).

The PCR court found that these allegations were without merit with the exception of the allegation that defendant was not advised as to the meaning of sexual battery (app. 143). The petitioner stated that at the time of his guilty plea he had not been advised that sexual battery does not mean any battery of a sexual nature, but, rather, is statutorily defined to include only certain specific acts, which can be loosely described as involving penetration of some sort. *State v. Elliott*, 552 S.E.2d 727 (S.C. 2001) *rev 'd on other grounds* (app. 143-44). The petitioner stated that he did not commit a sexual battery on his step-daughter and would not have pled guilty to criminal sexual conduct with a minor if he had known that it involved sexual penetration (app. 144). Plea counsel testified that he met with the petitioner one time, the day of his guilty plea, during the nine months he represented him. Counsel admitted that he did not review the meaning of sexual battery with the petitioner, saying that lewd act and criminal sexual conduct with a minor are basically the same thing: messing with children. The PCR court found that the plea counsel's testimony demonstrated a lack of knowledge of the nature of the crimes for which he represented the petitioner. Based upon the testimony of trial counsel and the petitioner, the PCR court found that the plea attorney did not advise petitioner of the meaning of

5

sexual battery and the significance of penetration as it relates to criminal sexual conduct with a minor in the first degree. Considering the entire record including the guilty plea transcript, the PCR court found that the error was not cured by the colloquy during the guilty plea (app. 144).

The PCR court further found that reasonable and prevailing professional norms would require that a lawyer advise a criminal defendant of the elements of the crime and that he ensure that the defendant understands the nature of the offense to which he is charged (app. 144). The petitioner's plea counsel did not do this. Upon hearing the testimony and reviewing the transcript of the plea, the PCR court found that the petitioner had shown prejudice, as had he known the definition of sexual battery, he would not have pled guilty and would have insisted on going to trial (app. 145).

The petitioner further argued that the State lacked subject matter jurisdiction because of invalid arrest warrants and indictments as well as the fact that his case did not receive a preliminary hearing (app. 145). The PCR court disagreed and found that the indictments contained the necessary elements of the intended charge to confer subject matter jurisdiction regardless of any alleged errors in the warrants and the failure to have a preliminary hearing. *State v. Gentry*, S.E.2d 494 (2005). Further, the PCR court found the petitioner presented no evidence that a preliminary hearing was properly requested pursuant to South Carolina Rule of Criminal Procedure 2(b), and even if it was properly requested, subject matter jurisdiction exists upon the proper indictment of the case even if a preliminary hearing is not held. *State v. Ballington*, 551 S.E.2d 280 (2001) (app. 145).

The PCR court granted the petitioner's motion for PCR based on ineffective assistance of counsel. The convictions were reversed and remanded for a new trial, and the petitioner was to be released to the custody of the Greenville County Detention Center where his original bond would be reinstated (app. 146).

On April 24, 2007, the State filed a motion to alter or amend the final order (app. 147-49). The petitioner also filed a *pro se* motion for reconsideration (app. 151-57). The PCR court filed its order denying the Rule 59(e) motion to alter or amend the final order on July 6, 2007 (app. 161-62). In the order, the PCR court stated that, based upon careful reconsideration of all of the evidence in this case and upon full consideration of the respondent's and the petitioners motions and supporting memorandum, it was not persuaded to alter or amend the judgment. The PCR court further found that oral argument would not aid in the reconsideration of the original judgment and that the previous order fully comported with the requirements of Rule 52(a) SCRCP (app. 161).

### First PCR Appeal

The State timely filed a notice of appeal on July 12, 2007 (app. 163-65). On appeal, the petitioner was represented by Robert M. Pachak, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The State perfected its appeal with the filing of a petition for writ of certiorari (app. 166-77). In the petition, the State raised two arguments. First, the State argued the PCR judge erred in finding the petitioner met his burden of proving ineffective assistance of counsel. Second, the PCR judge erred in finding any ineffective assistance of counsel was not cured by the plea colloquy (app. 167). The petitioner filed a return to the petition for writ of certiorari, asserting there was evidence to support the PCR judge's findings that plea counsel was ineffective in failing to explain the meaning of sexual battery prior to his guilty plea (app. 178-85).

In an order filed November 6, 2008, the South Carolina Supreme Court granted the petition for writ of certiorari. The court also ordered the parties to proceed to serve and file the appendix and briefs as provided by Rule 227(j), SCACR (app. 186). On November 19, 2008, the State filed its final brief of petitioner, raising the same issues raised in the petition for writ of certiorari (app. 187-200). The petitioner filed a final brief of respondent,

7

asserting the same argument as in the return to the petition for writ of certiorari (app. 201-209).

In a published opinion filed July 13, 2009, the South Carolina Supreme Court reversed the PCR court's order. *Terry v. State*, 680 S.E.2d 277 (S.C. 2009).[2]  In the opinion, the South Carolina Supreme Court distinguished the definitions for "sexual battery" and "sexual abuse." *Id.* at 283.  The court noted that plea counsel testified at the PCR hearing that he believed the terms "sexual battery" and "sexual abuse" were the same. *Id.*  Because plea counsel did not differentiate between the two terms or correctly explain them to the petitioner, there was evidence to support the PCR judge's decision that plea counsel's performance was deficient. *Id.*  Given plea counsel did not comprehend this distinction and did not inform petitioner of a crucial element of the offense of CSC with a minor, first degree, the Supreme Court agreed with the PCR judge that counsel's representation fell below an objective standard of reasonableness. *Id.*  The Supreme Court found, however, that plea counsel's deficient performance was cured by the plea colloquy even though there was no specific discussion of the term "sexual battery." *Id.*  The PCR judge found that any allegations regarding the petitioner's competency were not meritorious. *Id.*  In light of this decision, the PCR judge implicitly found that the petitioner had the requisite mental capacity to comprehend the plea proceeding. *Id.*  At the plea proceeding, the judge read the indictments, and the petitioner acknowledged that he understood these charges.  The indictment for CSC with a minor, first degree identified the elements of the offense, which included a reference to a "sexual battery." *Id.*  After the petitioner affirmatively stated that he understood the charges and admitted his guilt, the solicitor gave a detailed factual basis for the charges. *Id.*  In the factual recitation, the solicitor identified conduct that constituted the elements of first degree CSC with a minor. *Id.*  Specifically, the solicitor conveyed that

---

[2]A copy of the opinion is included in the appendix at pages 210-22.

the petitioner had penetrated the nine-year-old victim's vagina with his finger and her anus with his penis. *Id*. Both of these acts clearly meet the definition of a "sexual battery." *Id*. The petitioner admitted that the solicitor's statement of facts was true. *Id*. Therefore, the Supreme Court found that the petitioner knowingly and voluntarily entered a plea as to the charge of CSC with a minor, first degree. *Id.* 283-84 (citing *Roddy v. State*, 528 S.E.2d 418, 421 (2000)(recognizing that for a guilty plea to be voluntarily and knowingly entered into, the record must establish the defendant had a full understanding of the consequences of his plea and the charges against him)).

In view of this determination, the Supreme Court further concluded the PCR judge erred in granting the petitioner a new trial for the two counts of lewd act upon a child. *Id.* at 284. Given that "sexual battery" is not an element of lewd act upon a child and that the petitioner admitted to inappropriately touching his stepdaughters, the two charges for lewd act upon a child should not have been affected by plea counsel's deficient performance with regard to the definition of a "sexual battery." *Id*. Accordingly, the Supreme Court found there was no evidence to support the PCR judge's decision to grant the petitioner relief on those two convictions. *Id*. Accordingly, the decision of the PCR judge was reversed. *Id.* The remittitur was issued on July 29, 2009, and was filed in the Office of the Clerk of Court of Greenville County on September 14, 2009 (doc. 148-12).

### *Federal Habeas Petition*

On July 28, 2010,[3] the petitioner file a petition in this court in the present habeas action. Ultimately, the petitioner filed three separate petitions, which were combined as one by order dated September 20, 2010 (doc. 13). The grounds raised in each are set forth below.

---

[3]As the petitioner is a prisoner, the pleading was filed at the moment of delivery to prison authorities for forwarding to the District Court, pursuant to *Houston v. Lack*, 487 U.S. 266 (1988) (*see* doc. 1-3 at 2).

9

***First Petition***

**Ground One:** Prosecutorial Misconduct - Violation of Rule 5-Brady/Rules 5 and 6 - SCRCrimP. Withholding of SLED results. (See Memorandum)

Supporting Facts:

    1.    County Sheriffs Dept. retrieved from hospital "1 rape kit," (See exhibit 3).

    2.    Investigator prepared "property control" and "chain of custody" reports for transference of kit to SLED for DNA testing, for General Sessions Court (marked "ORIGINAL" copy). Reports prepared for clothing as well.

    3.    DNA results completed and returned to sheriff/solicitors' office - via cc: (6) six days prior to G.S. appearance of March 8, 2005. (See exhibit P-2)

    4. 1-18-05/discovery "itemized cover sheet" shows no SLED results (exhibit P-6)

**Ground Two:** Prosecutorial Misconduct - Use of alleged admission by Applicant from Family Court; (See Memorandum); without appointed counsel

Supporting Facts:

    1.    Applicant attended a Family Court hearing on October 12, 2004 without appointed counsel. (See Transcript -(PCR) p. 87, l. 12-25; p. 88, l. 1-3).

    2.    A court order was issued on August 26, 2004 and October 12, 2004 (Trans.- (PCR)- p. 85, l. 1-9). The "orders" were "Treatment Plans." (See exhibits 9 (a & b)

    3.    There was "no transcript" in discovery or forwarded to G.S. Court.

    4.    The "solicitor," stated in the guilty plea transcript (in the recitation of facts)-that "the defendant admitted guilt in Family Court." (R p. 12, l 17).

**Ground Three:** Ineffective Assistance of Counsel - Issues 2., 1., and 4. - (Please see PCR Order)(See also Memorandum Argument III)

Supporting Facts:

    1.    Failure to investigate - met with Applicant once (the day of the plea - 10 minutes) (Plea Transcript - p. 84, l. 9-11; p. 50, l. 25; p. 51, l. 1-9) - No Brady request.

2.      Failure to address the Fact of my two court appearances under psychotropic medications (Family and G.S.). (Plea Trans. -p. 54, l. 17-24; p. 56, l. 15-20; p. 59, l. 8-12; p. 59, l. 21-25; pgs. 60-62, l. 1-25). (See exhibits )(See exhibits )

3.      Failure to negotiate plea offer(s), esp. 1-18-05! (Trans.-p. 97, l. 15-25; p. 98, l. 1-19)

Ground Four: Ineffective Assistance of Counsel - Issues 3. and 5. (Please see PCR Order)(See also Memorandum Argument III)

Supporting facts:

1.      Failure to present mitigating evidence, ie - there was "never" a psychological exam performed in this case, despite "mandatory requirement and "two court order mandates." (Plea Trans.-p. 85, l. 23-25; p. 86, l. 1-25; p. 87, l. 1-8). (See exhibit(s)).

2.      Failure to adequately advise the Applicant, ie - counsel advised guilty plea despite lack of evidence. (Trans.-p. 38, l. 3-15).

**Second Petition**[4]

Ground One:  14th Amendment due process violation of Brady. "No Relief" at PCR failure to disclose DNA (Sled results) or toxicology report.

Supporting facts:

1.      Greenville Co. Sheriff's Investigator prepared 2 "Property Control and Custody Reports" for the Rape Kit Forwarded and returned from SLED.

2.      Copy of "results" also forwarded (cc:) - to Solicitor (dated March 2, 2005).

3.      "Itemized" discovery list dated 1-18-05-shows P, and, E Reports sent to defense counsel, but NO RESULTS.

4.      Plea hearing was March 8, 2005. Results still withheld No disclosure of "Toxicology" evidence, whatsoever. All "potential" evidence destroyed 3 months after plea. (except toxicology results). Facts 1-3 argued at PCR.  Judge ruled issue of DNA results "unmeritorious" for relief.

---

[4]This petition was originally filed in C.A. No. 6:10-2009-JFA, which was closed when the petitions were combined in the instant case.

Ground Two: Misconduct/abuse of discretion/use of "alleged admission" from Family Court by the Applicant without counsel-, (See Memorandum); not in discovery.

Supporting facts:

    1.    Applicant attended a Family Court hearing on October 12, 2004, without appointed counsel. (See, PCR Transcript - p.87, lines 12-25; p. 88, lines 1-3).

    2.    A court order was issued on both August 26, and October 12, 2004. (PCR Trans.. P. 85, lines 1-9). The Orders, though argued as exhibits, never became a part of the records.

    3.    There was "No statement of Admission" provided for G.S. Court.

    4.    Yet, the solicitor stated at the plea hearing that "The defendant" admitted guilt in Family Court."

    5.    PCR Judge ruled issue "unmeritorious"

Ground Three:  The PCR Judge erred in granting relief based upon "one issue" of I.A.C., (See Memorandum), Abuse of descretion.

Supporting facts:  At the PCR hearing the Petitioner submitted that his counsel failed to investigate and as a result: A.) Defendant pled under the influence of "psychotropic drugs" B.) Failed to request "manditory[sic] psychological evaluation. (Court ordered!) C.) Failed to present SLED results to the Petitioner before advising a guilty plea. D.) Failed to negotiate the State's "plea offer" for "a cap" on active time. * The PCR Judge found "no ineffective counsel" or Prosecutorial Misconduct

**Third Petition**[5]

Ground One: Prosecutorial Misconduct at the Certiorari Level - deliberate obstruction in the true preparation of the Record on Appeal (Appendix)

Supporting Facts:

    1.    During the course of the PCR hearing I entered (9) nine exhibits into the Court records. The PCR judge - in turn - entered "two document," (the plea offers), as well. (See exhibit); (See also, PCR Transcript - pgs. 97-98, l. 15-19).

---

[5]This petition was originally filed in C.A. No. 6:10-2008-JFA, which was closed when the petitions were combined in this case.

2.      I received PCR relief, (Reverse and Remand), and as a result, the state became the "Petitioner" for certiorari with the responsibility of preparing an Appendix. (See exhibit ). (See Memorandum In Support)

3.      The Attorney General "retained All exhibits" with the G.S. Clerk. (See exhibit).

Ground Two: Ineffective Appellate Counsel - (See Memorandum) - Failure to provide no more than a "less than perfunctory" representation/investigation.

Supporting Facts:
From our very first communique it was established that we had "opposing views" concerning presenting the misconduct (PCR) issue as "highly meritorious" in certiorari. Me -for, him -against. This view was escalated further, counsel refused to pursue stipulation - 3. In the PCR Final Order; p. 8, (enclosed). Counsel then refused to challenge the absence of all the exhibits from the Appendix. In both the Respondents' "return for Writ" and "Brief for Certiorari" my counsel "adopted" the States' inaccurate "case statement.

Ground Three: Misinterpretation of the Record on Appeal (Appendix) resulting in "reversal" of the PCR Order granting relief. (See Memorandum)

Supporting Facts:  Discrepancies are per page No. 5 of the Opinion. (See also; Memorandum)

1.      The Petitioner responded "yes" to taking medication within 24 hours and did elaborate on his treatment.

3.      There was an additional "Amended Application" from the Petitioner, filed but deliberately witheld [sic] from the "record on appeal."
* This would be (PCR exhibit P-8)!

Ground Four:  Due Process violation - Denial of right to present case under "pro se" status by the Chief Justice of the S.C. Supreme Court.

1.      Contacted Appellate counsel - immediately after appointment - to discuss pursuance of Grounds One thru Three, in this application

2.      Counsel ignored my concerns, and as a result, "unceremoniously" told me that "if I were not satisfied with his appointment, I know what I could do."

13

      3.     Petitioned the Court for "pro se" status by serving all concerned parties. (See exhibit ) (See also Memorandum)

      4.     Pro se representation denied by Chief Justice (See exhibit )

On December 10, 2010, the respondent filed a return and motion for summary judgment.  By order filed December 10, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  On January 28, 2011, the respondent filed an amended return and memorandum of law in support of summary judgment.  Another *Roseboro* order was issued on January 28, 2011. The petitioner filed his opposition to the motion for summary judgment on March 10, 2011, and the respondent filed a reply on March 31, 2011.

On June 16, 2011, the undersigned issued a report and recommendation that the respondent's motion for summary judgment be granted as the petition was untimely (doc. 73).  On September 30, 2011, the Honorable Joe F. Anderson, Jr., United States District Judge, issued an order dismissing the respondent's motion for summary judgment *without prejudice* and with leave to refile after the petitioner has exhausted his state remedies and after the petitioner has filed an amended petition (doc. 79).  Judge Anderson also stayed the current case pending exhaustion (*id.* at 7–9). The petitioner was directed to proceed, within 30 days, to commence an action to exhaust those unexhausted claims outlined in the respondent's motion for summary judgment, to notify the court within 60 days of the status of his state proceedings, and to file a copy of the state petition or appeal that he would be filing with the South Carolina courts (*id.* at 9). The petitioner was further directed to immediately file an amended petition in this case when the proceedings concluded in state court (*id.*).  Judge Anderson ordered that the petitioner "may not assert

14

any new claims other than those he has previously identified in this present petition. At such time, the respondent may move for summary judgment" (*id.*).

### Second PCR Action

The petitioner filed a second application for PCR (2012-CP-23-1297) on February 20, 2012, asserting claims of prosecutorial misconduct, ineffective "trial" and "appellate" counsel, and due process violations (app. 650-761). The State served its return and motion to dismiss on August 10, 2012 (app. 762-68). An evidentiary hearing in the PCR action was held on December 17, 2013, before the Honorable G. Edward Welmaker, Circuit Court Judge (app. 769-823). the petitioner was present and was represented by Brian Johnson, and the State was represented by Assistant Attorney General Karen Ratigan. On February 17, 2014, the PCR court issued its order of dismissal (app. 836-43). In the order, the PCR court noted it had the opportunity to review the record and had heard the testimony and arguments presented at the PCR hearing (app. 839). The PCR court had further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. The PCR court found that, as regards all issues except for that of a review of appeal issues from the first PCR application (pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991))[6], the issues must be dismissed for failure to comply with the filing procedures of the Uniform Post-Conviction Procedure Act. S.C. Code Ann. §§ 17-27-10, *et. seq.* (2003), which reads as follows:

> An application for relief filed pursuant to this chapter must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later.

---

[6]"Under *Austin*, a defendant can appeal a denial of a PCR application after the statute of limitations has expired if the defendant either requested and was denied an opportunity to seek appellate review, or did not knowingly and intelligently waive the right to appeal." *Odom v. State*, 523 S.E.2d 753, 755 (S.C.1999); *see also King v. State*, 417 S.E.2d 868 (S.C.1992) (explaining the appellate procedure in an *Austin* matter).

(App. 839 (quoting S.C. Code Ann. § 17-27-45(a)). The petitioner pled guilty to the offenses he challenged in this application on March 8, 2005. Therefore, he was required to file his application for PCR before March 8, 2006. This application was filed on February 20, 2012, which was more than five years after the statutory filing period had expired. Accordingly, the PCR court dismissed as untimely all issues except the *Austin* claim. The PCR court found the issues must also be dismissed because they were successive and forbidden pursuant to S.C. Code Ann. § 17-27-90, unless an applicant can point to a "sufficient reason" why new grounds for relief were not raised or were not properly raised in previous applications (app. 840 (citing *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991)). As the petitioner had failed to present any reasons why he could not have raised the current allegations in his previous PCR application, the PCR court denied any such issues as improper and successive (app. 841).

With regard to the petitioner's *Austin* claim, the PCR court noted that the petitioner stated he filed a *pro se* Rule 59(e) motion in his first PCR case (app. 841). The petitioner stated PCR counsel failed to assist him and that he felt "shunned." The petitioner admitted he never asked PCR counsel to file a notice of appeal after he was successful in obtaining relief. The petitioner's attorney from his first PCR application testified the petitioner never asked her to file a Rule 59(e), SCRCP motion and that there would have been no merit to such a motion (app. 841). PCR counsel noted she drafted the order pursuant to the judge's instructions, so she did not believe a Rule 59(e) motion was necessary but that she would have filed one if it was necessary to preserve the record. PCR counsel testified she was aware the petitioner had filed a *pro se* Rule 59(e) motion, and the petitioner did not ask her to file a notice of appeal. PCR counsel testified that, if the petitioner had asked her file a notice of appeal, she would have done so but advised the issues he could have raised on appeal would not have been meritorious. The PCR court found the petitioner had not met his burden of proving he is entitled to an *Austin* review of

16

the issues denied in his first PCR application (app. 841).  The petitioner claimed PCR counsel was deficient in failing to file a notice of appeal following the March 2007 order granting his PCR application (app. 841-42). Despite obtaining relief based upon plea counsel's failure to define sexual battery, the petitioner contended PCR counsel was deficient in failing to file a notice of appeal to contest the denial of relief based upon undisclosed plea offers, after-discovered evidence, and other grounds (app. 842). The petitioner filed a *pro se* Rule 59(e) motion, and the PCR judge denied the Rule 59(e) motions submitted by both the petitioner and the State. At the PCR hearing, the petitioner admitted on cross-examination that he never asked PCR counsel to file an appeal. PCR counsel testified she generally files a Rule 59(e) motion if a legitimate issue should be preserved for appeal, and, in her professional opinion, no grounds existed for filing such a motion in this case. Further, PCR counsel testified the Supreme Court would be substantially more likely to affirm a grant of relief based upon plea counsel's failure to define sexual battery than on other grounds. Thus, PCR counsel made the strategic decision not to appeal as an attempt to minimize the chances of reversal of the petitioner's relief. The PCR court found that, as the petitioner never asked PCR counsel to file a notice of appeal, she was not deficient for not filing the notice (app. 842). The PCR court further found PCR counsel's decision not to file a notice of appeal without the petitioner's request was a legitimate strategic decision for his appeal, and the petitioner had failed to demonstrate this decision fell below prevailing professional norms (app. 842 (citing *Strickland v. Washington*, 466 U.S. 668 (1984); *McLaughlin v. State*, 575 S.E.2d 841, 844-45 (S.C. 2003) (holding that where counsel articulates a valid reason for employing a certain trial strategy, such conduct will not be deemed ineffective assistance of counsel)). Based on all the foregoing, the PCR court concluded that the PCR application must be denied and dismissed *with prejudice*. The PCR court advised the petitioner that he must file a notice of intent to appeal within thirty

days from the receipt of the PCR court's Order if he wanted to secure appropriate appellate review (app. 843).

### Second PCR Appeal

The petitioner timely filed and served a notice of appeal on April 30, 2014 (doc. 148-7). On appeal, the petitioner was represented by Laura M. Caudy, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The petitioner's appeal was perfected with the filing of a petition for writ of certiorari.  The petitioner argued the PCR court erred by refusing to grant him a belated appellate review of his original PCR claims pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991) as there was no evidence he knowingly and intelligently waived his right to appeal or that PCR counsel ever advised him of his right to appeal, and where it was clear by the petitioner's actions, including following the federal court's instruction to file a second PCR application, that he wished to seek appellate review (doc. 148-8).[7]

---

[7]As required by *King v. State*, 417 S.E.2d 868, 869 (S.C. 1992), the petitioner submitted the following Statement of *Austin* Questions:

> 1. Whether Petitioner's guilty plea was knowingly, intelligently, and voluntarily made where plea counsel failed to challenge Petitioner's competency to plead guilty, request a competency evaluation, or discover Petitioner's severe mental illness particularly where Petitioner was housed in the mental health sector of the law enforcement center for the nine months he was incarcerated prior to his guilty plea and where he was taking numerous prescription medications to treat his mental illness during his pre-trial incarceration and at the time of his plea?
>
> 2. Whether Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when plea counsel failed to present mitigating evidence at Petitioner's guilty plea proceeding including his twelve year military background, his severe mental health ailments, including depression, and the fact that the victims failed to attend the plea hearing or recommend incarceration?
>
> 3. Whether Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when plea counsel failed to effectively negotiate a plea offer with the solicitor when there was no physical or forensic evidence of a sexual battery, the alleged victim claimed the sexual battery occurred while her clothes were on, and where the solicitor indicated she would be "willing to discuss a cap on active time"?

The State filed a return to the petition for writ of certiorari (doc. 148-9).  In an order filed June 4, 2015 (doc. 148-10), the South Carolina Supreme Court noted that Judge Nettles granted petitioner's first application for PCR on one ground, but denied the application as to the remaining grounds. The State then appealed, but the petitioner did not file a cross-appeal, and the South Carolina Supreme Court reversed in *Terry v. State*, 680 S.E.2d 277 (S.C. 2009).  The Supreme Court also noted that the petitioner filed a second PCR application alleging, among other things, he did not knowingly and intelligently waive his right to appeal the remaining issues in Judge Nettles' order and asking for a belated review of his remaining PCR issues pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991).  Judge Welmaker denied the petitioner's application, finding the petitioner was not entitled to a belated review.   Thus, the petitioner sought a writ of certiorari from the order issued by Judge Welmaker denying a belated review of the remaining issues in Judge Nettles' order pursuant to *Austin*. The Supreme Court granted the petition for a writ of certiorari from Judge Welmaker's order, dispensed with further briefing, and proceeded with an *Austin* review of Judge Nettles' order. The petition for a writ of certiorari from Judge Nettles' order was denied (doc. 148-10). The remittitur was issued on June 22, 2015 (doc. 148-12).

***Amended Federal Habeas Petition***

On June 24, 2015, the undersigned issued an order giving the petitioner twenty-one days to submit an amended petition, referencing Judge Anderson's order of

---

4. Whether the PCR court erred by finding the solicitor did not engaged in prosecutorial misconduct when he failed to turn over to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Rule 5, SCRCrimP, the SLED Forensic Services Laboratory Report summarizing the results of the analysis of the rape kit from the alleged criminal sexual conduct victim indicating no semen was identified on the oral, vaginal, and rectal swabs where this evidence was favorable to Petitioner, was in the possession and known to the solicitor, was suppressed, and was material to Petitioner's guilt or innocence?

(Doc. 148-8 at 15-16).

September 30, 2011 (doc. 133).  The petitioner filed his amended petition on July 24, 2015 (doc. 137).  The amended petition sets forth the same grounds he originally alleged in the first, second, and third federal petitions (doc. 137). On that same date, the petitioner filed a motion to lift the stay of the current case (doc. 138).  After receiving an extension of time, the respondent filed a return and motion for summary judgment on September 28, 2015 (doc. 148).  In the return, the respondent agreed that the stay should be lifted because the conditions for lifting the stay, as outlined in Judge Anderson's order (doc. 79 at 9), have been met (doc. 148 at 1).  By order filed September 29, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 150).   On November 3, 2015, the petitioner filed his opposition to the motion for summary judgment (docs. 153, 154).

## **APPLICABLE LAW AND ANALYSIS**

### *Standard of Review*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).   An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.   In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

20

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### Exhaustion

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). [8]

---

[8]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

21

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The petitioner did not file a direct appeal, and he cannot file for a direct appeal now as any such filing would be deemed untimely. *See* Rule 203(b)(2), SCACR (notice of appeal in from plea or trial in Court of General Sessions must be served within ten days of

written notice of entry of the order or judgment when a timely post-trial motion is made). Thus, the petitioner has technically exhausted this state remedy.

The respondent concedes that the petitioner has now exhausted his state PCR remedies following his second PCR action (doc. 148 at 25-26).   However, the respondent argues that since the petitioner did not properly exhaust all of the claims raised in this action, some were procedurally defaulted in state court and are subject to procedural bars.

### Statute of Limitations

The present habeas corpus action was filed on July 28, 2010, and, accordingly, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this case.  *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997).   The respondent first argues[9] that the petition is untimely under the one-year statutory deadline set forth in the AEDPA.   This court agrees.

The one-year time period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[10]   However, "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2).   State collateral review tolls the one-year statute of limitations under Section 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), but it does not establish a right to file within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000).

---

[9]As this court recommends that the petition be dismissed as untimely, the respondent's remaining arguments will not be addressed.

[10]The statute provides other possible start dates for the one-year time period that are not relevant here.  *See* 28 U.S.C. § 2244(d)(1)(B)–(D).

Here, the petitioner's state court convictions became final on March 18, 2005, which was ten days following his guilty plea on March 8, 2005. *See* Rule 203(b)(2), SCACR (must file notice of appeal within ten days of conviction).   Accordingly, the statute of limitations began to run on March 19, 2005. The petitioner then filed his state PCR action (2005-CP-23-7327) on November 11, 2005, at which time 237 days of untolled time had elapsed.   The statute of limitations was tolled pursuant to 28 U.S.C. § 2244(d)(2) until September 14, 2009, when the remittitur from the South Carolina Supreme Court was filed in the Office of the Clerk of Court for Greenville County (doc. 148-12). *See Beatty v. Rawski*, 97 F. Supp. 3d 768, 775-76, 780 (D.S.C. 2015) (finding that final disposition of a PCR appeal in South Carolina does not occur until the remittitur is filed in the circuit court, and thus the Section 2254(d)(1) statute of limitations is tolled until that time). Accordingly, the statute of limitations began to run again on September 15, 2009, and expired 128 days later, on January 21, 2010.

As the petitioner is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court.   The petitioner delivered his Section 2254 petition to prison authorities for mailing to the court on July 28, 2010, the date stamped on the back of the envelope containing his petition (doc. 1-3).   Thus, the petitioner exceeded the statute of limitations by 188 days.

The petitioner appears to argue that the 2012 PCR action tolled or revived the already expired statute of limitations for the filing of this federal habeas action (doc. 154 at 10-31). However, the 2012 PCR application did not toll the statute of limitations for the instant federal petition because it was filed after the expiration of the one-year limitations period under Secton 2244(d)(1) (A). To toll the one-year statute of limitations period governing federal habeas petitions, state PCR proceedings must commence prior to the expiration of the federal statutory period. *See* 28 U.S.C. § 2244(d). Although in his 2012

24

PCR action the South Carolina Supreme Court granted the petitioner a belated appeal pursuant to *Austin* from his 2005 PCR application (doc. 148-10), this does not entitle the petitioner to toll the time between the PCR actions. *See McHoney v. South Carolina*, 518 F.Supp.2d 700, 705 (D.S.C.2007) (finding that no collateral action was "pending," as defined by the AEDPA, during the time between the state court's initial denial of the PCR application and the state court's allowance of a belated appeal of that PCR application and thus the AEDPA's limitations period was not tolled during this time).

The court is mindful of the Supreme Court's opinion in *Jimenez v. Quarterman*, 555 U.S. 113 (2009), which held that when a state court grants a criminal defendant the right to file an out-of-time *direct* appeal during collateral review before defendant has first sought habeas relief, the date of finality of the conviction and the commencement of the limitations period is the conclusion of the out-of-time direct appeal, or the expiration of time for seeking review of that appeal. *Jimenez* emphasized that its decision is a narrow one limited to construing the language in Section 2244(d)(1)(A) that points to the conclusion of direct appellate review in state court. Section 2244(d)(2) governs the tolling of the statute of limitations during the pendency of PCR proceedings. Therefore, a subsequent motion for a belated appeal of a state PCR action does not retroactively toll the statute back to the filing date of the original PCR. *See Harris v. Riley*, C.A. No. 0:14-187-MGL,2015 WL 403202, at *6 (D.S.C. Jan. 30, 2015) (finding second PCR action did not toll federal statute of limitations as it was filed after the expiration of time period despite grant of *Austin* appeal); *Clayton v. Bryant*, C.A. No. 8:12-cv-878-RBH*,* 2013 WL 1187030, at *3 (D.S.C. March 20, 2013) (same); *Hepburn v. Eagleton*, C.A. No. 6:11-2016-RMG, 2012 WL 4051126, at *2-3 (D.S.C. Sept. 13, 2012) (same); *Israel v. McCall*, C.A. No. 3:11–02999–JMC–JRM, 2012 WL 3877665, at *4 (D.S.C. Aug.1, 2012) (collecting cases holding "that the statute of limitations is not tolled after an initial PCR is concluded and the filing of an *Austin* PCR because there is no collateral proceeding pending during that time"

and finding in the case before the court that the AEDPA limitations period was untolled between the issuance of remittitur with respect to the petitioner's first PCR application and the filing of a second PCR application raising an *Austin* claim), *R&R adopted by* 2012 WL 3877669 (D.S.C. Sept.6, 2012).

To avoid application of Section 2244(d) regarding the timeliness of the instant federal habeas petition, the petitioner must show that the one-year limitations period should be equitably tolled under applicable federal law. *See Holland v. Florida*, 560 U.S. 631 (2010) (concluding that § 2244(d) is subject to the principles of equitable tolling); *Harris*, 209 F.3d 325 (same). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citation omitted); *see also Holland*, 560 U.S. at 649. Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330. *See also United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present: "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir.2003) (*en banc*).

Here, the petitioner has failed to show that he is entitled to equitable tolling. In his response in opposition to the motion for summary judgment, the petitioner asserts that he is entitled to equitable tolling because he was denied "his right to a *pro se* petition for rehearing in certiorari" (doc. 153-1 at 18-20 (citing app. 297, S.C. Sup. Ct. 6/2/2008 denial of m. to proceed *pro se*)). However, the petitioner was not entitled to file a *pro se* petition for rehearing in his first PCR action. He was represented by counsel in the PCR appeal, and South Carolina courts do not allow hybrid representation. *See Foster v. State*,

379 S.E.2d 907 (S.C. 1989); *Jones v. State*, 558 S.E.2d 517 (S.C. 2002).  The petitioner has failed to show any reason for his delay in filing the instant federal petition, much less one justifying equitable tolling of the limitations period.  Based upon the foregoing, the petition was not timely filed, and it is barred by Section 2244(d)(1).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 149) be granted. Furthermore, it is recommended that the petitioner's motion to lift stay (doc. 138) also be granted.

s/Kevin F. McDonald
United States Magistrate Judge

January 26, 2016
Greenville, South Carolina

27

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).